ARMSTRONG, Judge.
The appellant, Mr. A.S. Al-Dahir, is appealing the First City Court’s judgment granting Mr. Bertrand Rabalais $767.42 as payment for. work performed by Red’s Washer and Dryer Repair from April 1, 1988 until May 4, 1988. We affirm the trial court’s judgment.
Between April 1, 1988 and May 24, 1988 Mr. Rabalais, the owner of Red’s Washer *515 and Dryer Service, was contacted by Mr. Al-Dahir, the owner of Golden Star Cleaners # 2, to repair a Wascomat Washer-Extractor (Wascomat), an air compressor, Mil-nor Washer-Extractor (Milnor), and a Mul-timatic dry cleaning machine (Multimatic). The contract between Mr. Rabalais and Mr. Al-Dahir provided that a rate of twenty-five dollars per hour would be charged for labor, plus payment for an hour to cover each round trip made by Mr. Rabalais or Mr. Farris, his assistant. Testimony indicates that Mr. Al-Dahir had knowledge that neither Mr. Rabalais or Mr. Farris were licensed electricians or dry cleaning mechanics.
Mr. Al-Dahir purchased the Wascomat from Mr. Rabalais. The Wascomat was still under the service warranty. Accordingly, Mr. Al-Dahir was not charged for work performed on the Wascomat. Mr. Al-Dahir was charged for the work performed on the air compressor, Milnor and the Multimatic.
Sometime prior to April 1, 1988, Mr. Ra-balais changed the transformer on the Mul-timatic and was paid for the work. At that time, Mr. Rabalais suggested that the relay switches on the Multimatic should also be replaced. Mr. Al-Dahir agreed to order the necessary parts, and to contact Mr. Rabalais when the parts arrived.
Mr. Al-Dahir received the parts on March 21, 1988, after which he contacted Mr. Rabalais. Between April 1, 1988 and May 24, 1988 Mr. Farris changed the relay switches. Mr. Farris testified that he informed Mr. Al-Dahir that both the switches and the schematic diagram were not the correct ones for the Multimatic. However, Mr. Al-Dahir authorized Mr. Farris to attempt to use the parts. Although Mr. Farris spent twenty-four hours working on the relay switches, he was unable to adapt the parts to the Multimatic. Because the Multimatic was not repaired, Mr. Al-Dahir incurred expenses in the amount of $49.05 for a new motor, and $220.00 for laundry done off the premises. No further work was done to the Multimatic because the correct parts were not provided by Mr. Al-Dahir. During this time the Milnor washer and air compressor were repaired. The Milnor washer required replacement of a motor. The air compressor had ceased operation and required general repairs. Mr. Rabalais was paid $175.00 for the work done on the Milnor washing machine.
In December of 1988, Bertrand Rabalais filed suit against Mr. Al-Dahir to recover $1,561.47 as the outstanding debt on his account. Mr. Al-Dahir filed a reconven-tional demand for $2,496.60. On April 6, 1989, the First City Court rendered a judgment in favor of Mr. Rabalais for $1,117.42. The claim of $1,561.47 was reduced to account for the following expenditures made by Mr. Al-Dahir: $49.05 new motor, $220.00 laundry done off the premises, and $175.00 payment made. The reconventional demand was dismissed. On June 9, 1989, after rehearing both parties’ arguments, the First City Court denied Mr. Al-Dahir’s Motion for a New Trial, and reduced Mr. Rabalais award to $767.42 to allow Mr. Al-Dahir $350.00 for his inconveniences.
On appeal, Mr. Al-Dahir raises three assignments of error. The first assignment of error is whether the First City Court erred in not clearly defining the machines mentioned in the repair bill, the nature of the repairs to the Multimatic between April 1, 1988 and May 24, 1988, the function of each machine, and how the machines interacted. Mr. Rabalais was contacted by Mr. Al-Dahir to work on a Wascomat, air compressor, Milnor and Multimatic between the period of April 1, 1988 and May 24, 1988. The work done on the Wascomat and Mil-nor are not disputed. The dispute relates to work done on the air compressor and Multimatic. As such, these will be the two machines discussed.
Mr. Al-Dahir received a bill requesting payment for services on an air compressor and Multimatic between April 1, 1988 and May 24, 1988. The record indicates that Mr. Al-Dahir authorized Mr. Farris to attempt to adapt the relay switches Mr. Al-Dahir had purchased for Multimatic. During this same period of time, Mr. Rabalais testified that the air *516 compressor required general repairs. Mr. Al-Dahir testified that the air compressor did not require repairs. This is an issue of credibility and the record sufficiently supports the trial court’s judgment. The weight of the evidence and credibility of witnesses are for the sound judgment of the trial judge and an appellate court will not reverse the trial court’s conclusion in the absence of manifest error. Stuckey v. Hayden, 3 So.2d 443 (La.2d Cir.1941). Thus, we find no merit to this argument.
Mr. Al-Dahir’s second assignment of error is that the invoice did not reflect the correct number of billable hours. In an action on an open account, the creditor must first prove the account by showing that it was kept in the course of business and by introducing supporting testimony as to its accuracy. General Electric Co., Inc. v. La. Electric Supply Co., 460 So.2d 34 (La.App. 1st Cir.1984). Once the creditor establishes that the account is accurate and was kept in the course of business the burden shifts to the debtor. The debtor is then required to prove that he is entitled to certain credits. General Electric Co., Inc., supra.
Mr. Rabalais introduced an invoice providing that 52V2 billable hours at a rate of $25.00 per hour were spent on work done on a Multimatic and air compressor owned by Mr. Al-Dahir. Testimony by Mr. Rabalais indicated that more than 60 hours were actually spent on attempting to repair the Multimatic for which Mr. Al-Dahir was not billed for. Additionally, the invoice indicates that Mr. Al-Dahir was billed $45.00 per hour instead of $50.00 per hour for work done by Mr. Rabalais and Mr. Farris at the same time. The record indicates that Mr. Rabalais was repairing the air compressor while Mr. Farris was working on the relay switches for the Multimatic. Further, Mr. Rabalais testified that he presented Mr. Al-Dahir a summarized bill per Mr. Al-Dahir’s request. Mr. Rabalais has sufficiently proven that the account was accurate and was kept within the course of business. The burden now shifts to Mr. Al-Dahir.
The record reflects that Mr. Al-Dahir incurred expenses in the amount of $49.05 for a new motor, and $220.00 for laundry done off the premises. The trial court credited $49.05, $220.00 and $175.00 to Mr. Al-Dahir’s account. The $175.00 was credited for payment made by Mr. Al-Dahir some time after the dispute over the bill. The trial court further credited Mr. Al-Da-hir’s account $350.00 for his inconveniences. Thus, the trial court adequately determined the number of billable hours and properly credited Mr. Al-Dahir’s account.
Finally, Mr. Al-Dahir argues that the First City Court erred in not taking into ■account the lack of qualifications of Mr. Rabalais and Mr. Farris to do repairs on the Multimatic; and for not holding Mr. Rabalais liable for the damages done. Mr. Al-Dahir testified that he had knowledge that neither Mr. Rabalais or Mr. Farris were licensed electricians or dry cleaning mechanics. Further, Mr. Al-Dahir testified that the local Multimatic representative charged $45.00 per hour beginning from the time he left his premises. Thus, Mr. Al-Dahir could not have expected Mr. Rabalais or Mr. Farris to be experts at repairing the Multimatic.
We conclude that the First City Court did not err in rendering a judgment of $767.42 in favor of Mr. Rabalais.
For the foregoing reasons, we affirm the trial court’s decision.
AFFIRMED.